No. 24,554.

R. B. LIVINGSTON, *Appellant*, v. THE SUSQUEHANNA OIL CO., *Appellee*.

### SYLLABUS BY THE COURT.

1. STATUTES—*Touching the Weekly Payment of Laborers' Wages by Corporations Void.* Chapter 187 of the Laws of 1893, including its amended section 3 (Gen. Stat. 1915, § 5873 *et. seq.*, and chapter 221 of the Laws of 1919), which imposes certain duties on corporations touching the payment of laborers' wages, and which awards certain liquidated damages and inflicts certain penalties on corporations for the violation of such statute, but from which railway, farm, and dairy corporations are exempted, makes an unreasonable classification of corporations, and denies to them the equal protection of the law within the purview of the fourteenth amendment to the federal constitution, and is therefore void.

2. SAME. Chapter 187 of the Laws of 1893, including its amended section 3 (Gen. Stat. 1915, § 5873 *et. seq.,* and chapter 221 of the Laws of 1919) has certain infirmities under the Kansas constitution indicated in the opinion.

3. SAME—*Statutory Penalties—Liquidated Damages—Exemplary Damages.* Statutory penalties which are essentially compensatory in their nature and which make certain exemplary allowances to private litigants for aggravating circumstances are not necessarily mere fines for the breach of penal laws which must inure to the school fund under constitutional mandate, but are or may be valid as liquidated and exemplary damages.

4. SAME—*Statutes Providing for Payment by Corporations of Laborers' Wages on Leaving Their Employ Constitutional and Valid.* Chapter 219 of the Laws of 1911 (Gen. Stat. 1915, §§ 5880, 5881), which provide when wages shall be paid by corporations to persons leaving their employ and which prescribes penalties which are essentially exemplary damages for failure of any corporation to pay its employees within ten days after the termination of their employment does not violate any provision of the federal constitution; and an employee discharged without payment of his wages within ten days may have a cause of action under such act.

5. SAME—*Action by Employee for Wages—Demurrer to Petition Erroneously Sustained.* Plaintiff's second cause of action was not subject to the federal constitutional objections stated in the trial court's ruling on defendant's demurrer.

Appeal from Montgomery district court; JOSEPH W. HOLDREN, judge. Opinion filed June 9, 1923. Reversed.

*A. R. Lamb,* and *Clement A. Reed,* both of Coffeyville, for the appellant.

*C. D. Ise,* of Coffeyville, and *Thomas E. Wagstaff,* of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This appeal presents a question of constitutional law.

The plaintiff was a workman in the service of defendant and was discharged without promptly receiving his pay. He sued for a month's wages due him, $200, and for an item of expense, $7.50; and in a second cause of action he sued for a large sum at the rate of $200 per month, as a statutory penalty, pursuant to certain legislative enactments which will be set out below.

Judgment was entered in plaintiff's favor for his wages and expenses, but the trial court sustained defendant's demurrer to the second cause of action on constitutional grounds. Plaintiff appeals.

Two statutes are relied on by plaintiff. The first of these reads:

"An act providing for the weekly payment of wages in lawful money of the

United States by certain corporations, and providing a penalty for the violation thereof.

"§ 5873. All private corporations doing business within this state, except all steam surface railways and except corporations engaged in the production of farm and dairy products, shall pay to their employees the wages earned each and every week in lawful money of the United States, and all such wages shall be due and payable and shall be paid by such corporation not later than Friday of each week for all such wages earned the preceding week. (L. 1893, ch. 187, § 1; April 5.)

"§ 5874. Whenever such corporation fails to pay any of their employees, as provided in section 1 of this act, then a penalty shall attach to such corporation and become due to such employees, as follows: A sum equivalent to a penalty of five per cent per month as liquidated damages; and such penalty shall attach and become a judgment in any court of competent jurisdiction, and the penalty shall continue in full force and effect, including all the time intervening up to time of final payment. (L. 1893, ch. 187, § 2; April 5.)"

### Section 5875, as amended by chapter 221, Laws of 1919:

"§ 5875. Whenever any employee is discharged from the employment of any such corporation, firm or person then the wages of such employee shall become due and payable on the day of such discharge, and any corporation, firm or person failing to pay such wages on written demand, within twenty-four hours of time of demand, shall, as a penalty for such failure, continue to pay to such employee, from day to day, additional wages at the same rate that he had been earning previous to such discharge, until full payment of original wages is made."

The next three sections of this act need no attention here, and the next section (Gen. Stat. 1915, § 5879) which authorizes an attorney's fee in actions to collect wages has been held unconstitutional for want of uniformity, (*Anderson v. Oil Co.*, 106 Kan. 483, 186 Pac. 198) and because it violated the fourteenth amendment.

The second statute relied on reads:

"An act providing when wages shall be paid to any person leaving the service, either by resignation or discharge, of any firm or corporation; and providing penalty for violation of the provisions of this act."

"§ 5880. It shall be unlawful for any firm or corporation employing labor within this state, to refuse or neglect to pay to any person leaving its service either by resignation or discharge any money due as wages within ten days from the termination of such services, and such payment must be made either at the place of discharge or at any office of such company or corporation within the state as may be designated by the party employed, he giving notice in writing, to the foreman or party in charge of such work." (L. 1911, ch. 219, § 1; March 31.)

"§ 5881. Any corporation or firm failing or refusing to pay wages due to any person leaving their employment, as provided in section 1 of this act, shall, as a penalty for violation thereof for such nonpayment, the wages of such

servant or employee shall continue from the date of the discharge or resignation of said employee, at the same rate as if he was still in the service, until full and complete settlement is made: *Provided,* Such wages shall not continue for more than 60 days unless action for the recovery of the same shall have been commenced in any court of competent jurisdiction within that time." (L. 1911, ch. 219, § 2; March 31.)

Touching the first of these, the act of 1893 and its amended third section (act of 1919), the constitutional infirmities are quite apparent. It is not all corporations, nor all corporations within some reasonable classification, which must exercise dispatch under liquidated damages (section 2) and penalties (amended section 3) in the payment of wages to their employees. Steam surface railway corporations and corporations engaged in the production of farm and dairy products are exempted from its provisions. There is no conceivable basis for such discrimination. Such legislation offends against the fourteenth amendment just as clearly as did section 7 of the same act, held invalid in *Anderson v. Oil Co.,* supra, and for the same reasons. See, Rose's notes to *Gulf, Colorado & Santa Fe Ry. Co. v. Ellis,* 165 U. S. 150, in 41 Law Ed. 845, appendix.

Another objection to the act, not perhaps so disastrous to the whole of it, inheres in the penalties prescribed. Note that in section 2 a penalty of 5 per cent of the wages due and withheld is added, which is also declared by the statute to be an allowance of liquidated damages, and this allowance could fairly be construed as such without a legislative declaration. But amended section 3 also provides penalties which preclude any interpretation that these are liquidated damages, since the liquidated damages are already defined and provided for in section 2. In such a situation, amended section 3, which would dispose of what is essentially and purely a penalty by bestowing it on a private person, and not on the school fund as the constitution provides (Art. 6, § 6), is void. (*Harrod v. Latham,* 77 Kan. 466, 95 Pac. 11; see, also, *Condon v. Kemper,* 47 Kan. 126, 27 Pac. 829; *Hardy v. Kingman County,* 65 Kan. 111, 68 Pac. 1078; *Kuter v. Bank,* 96 Kan. 485, 152 Pac. 662; 2 Bouvier, [Rawle's 3d Rev.] 2024; 8 R. C. L. 578, 21 id. 206; 1 Sedgwick on Damages, [8th ed.] § 361 *et seq.*)

On the other hand, exemplary or punitive damages, sometimes allowed by statute, are not ordinarily construed to be pure penalties which must go to the school fund. While they savor of penalties they are not exclusively so. They are essentially compensatory,

taking cognizance of attendant aggravating circumstances which in their nature are not generally susceptible of accurate measurement in each particular case. Exemplary damages were known and familiar at common law, and there is no reason* for supposing that the adoption of the constitution with its provision that pure penalties—proceeds of fines for breach of penal laws, should inure to the school funds—was intended to abrogate private right to exemplary or punitive damages as known at common law. Later enactments in substantial accord therewith are similarly free from constitutional defect.

Amended section 3 of the act of 1893 (Gen. Stat. 1915, § 5875, amended by chapter 221 of the Laws 1919), has still another defect which ought to be noted. The title to the original act shows that the statute only dealt with "certain corporations." The title to the act of 1919 amending original section 3 indicates no broader purpose. It reads:

"An act in relation to the payment of the wages of employees of corporations upon discharge, and amending and repealing general section number 5875 of the General Statutes of 1915."

The legislative purpose is still avowed to concern itself with corporations, not with "firms" or "persons"; while in the body of the amendment, the words "firm or person" appear, and these are not expressed in the title of either the original or the amended act, (Art. 2, § 16.)

It is needless, however, to discuss the act of 1893 and its amendment of 1919 at greater length. They are altogether void and furnish no basis for plaintiff's second cause of action.

Let us inquire whether plaintiff's second cause of action may not be well founded under the act of 1911 (Gen. Stat. 1915, § § 5880, 5881, quoted above). Section 5880, among other matters, declares it to be unlawful for any firm or corporation employing labor to neglect to pay the wages of any person discharged from its service within ten days thereafter. According to the allegations of plaintiff's petition, the defendant did this very act. It discharged the defendant, its workman, and it neglected for more than ten days to pay him.

Section 5881 declares that where the corporate employer fails to pay according to the provisions of section 1 (§ 5880) the wages of such discharged employee shall continue at the same rate as if he were still in his employer's service, until full settlement is made,

Livingston v. Oil Co.

with the proviso that such wages shall not continue for more than 60 days after the employe's discharge unless an action thereon is commenced within that time.

Does not this section cover the plaintiff's case as stated in his petition? It certainly does. Plaintiff had been employed by defendant as a foreman of oil-drilling operations, in effect apparently as a workman or laborer. His wages were $200 per month. He was discharged on the last day of February, 1921, but defendant neglected to pay him. It does not appear that plaintiff commenced this action within 60 days from the date of his discharge so the amount of his recovery may be limited as provided by the statute to 60 days' wages computed from the date of his discharge.

Is there any constitutional infirmity in this statute to justify the trial court's ruling on the demurrer? While the statute does say that the continued allowance of wages after discharge is a penalty, we think it is essentially compensatory in its nature, as discussed above. It is a private wrong to turn off a workman without his pay. It is particularly a grievous thing for a corporation to do so. A corporation is an intangible entity, with many officials and functionaries. A laborer is oft-times mystified in attempting to deal with its numerous responsible heads. He may go from superintendent to manager and from manager to president, if these can be reached, only to be put off or sent on tedious or fruitless journeys to see other functionaries of the corporation before he can get his pay. With an individual employer, the ordinary case is different. The latter, with whom the contract of employment was made, is the individual who discharges the employee, and so is ordinarily at hand or readily accessible to pay when the employee is discharged, and if the laborer's wages are not forthcoming with his discharge, the employee knows at once that he must invoke the aid of the law to collect his due. In *State v. Railroad*, 242 Mo. 339, this subject is well considered, and certain excerpts therefrom are so pertinent that we quote:

"Nor does this act deny to the defendant the equal protection of the law. It applies to all corporations. Within the sphere of its operation, all artificial persons are treated alike under like circumstances and conditions. Because the act only applies to corporations, and not to natural persons, it does not contravene the equal 'protection clause of the federal constitution. Nearly all legislation is special, either in the objects sought to be attained or in its application to classes. And the general rule is that legislation does not infringe the constitutional right of equal protection where all persons, whether

natural or artificial, of such class, shall be treated alike under like circumstances and conditions. In the case of *Missouri Pac. R. Co. v. Mackey,* 127 U. S. 205, Mr. Justice Field, speaking of this provision of the federal constitution, says: 'Such legislation does not infringe upon the clause of the fourteenth amendment, requiring equal protection of the laws because it is special in its character. . . . And when legislation applies to particular bodies or associations, imposing upon them additional liabilities, it is not open to the objection that it denies to them the equal protection of the laws if all persons brought under its influence are treated alike under the same conditions.' [*Orient Ins. Co. v. Daggs,* 172 U. S. 557; *St. Louis & San Francisco R. Co. v. Matthews,* 165 U. S. 20; *McLean v. Arkansas,* 211 U. S. 239.] . . .

"Persons performing labor for individuals usually maintain some degree of personal acquaintance with their employers and know their business ability and reputation for paying their debts. If the employer be a successful man, entirely honest, his laborers can with a fair degree of safety, depend upon getting their wages, even though they do not receive same semi-monthly. It is a well known fact that many men with little or no means pay their debts promptly, and will not incur obligations which they cannot meet. Other men who could pay their debts contrive in some way to avoid doing so; therefore, the laborer who works for an individual can usually acsertain whether he can safely depend upon that individual to pay him.

"Besides this, all the property which an individual may acquire during his lifetime, after incurring labor debts, will become liable for the payment of such debts, unless the debtor applies to a bankruptcy court to blot out his obligations; and not many men have sought or will likely seek to free themselves from the obligation of labor debts in that manner.

"With corporations, the situation is different. Their employees frequently do not know who the shareholders are. Corporations are invariably managed by agents, and those agents often have no personal interest in the success of the business which they are employed to supervise. Corporations are usually allowed to continue their operations long after they become insolvent; and frequently when they do fail their employees lose a considerable amount of the wages they have earned; and thereby much suffering and want is brought upon them and their dependents. In working for corporations, the laborer has nothing but the corporate property to look to for his wages; and if its property be mortgaged and the corporation fails or is placed in the hands of a receiver, he often loses his wages, or is forced to wait for them indefinitely.

"Individuals who employ laborers do not so often continue in business after they begin to lose money and are in danger of failing, for the individual employer knows that his private property, present and prospective, is likely to be consumed for labor debts.

"The stockholders or owners of corporations stand on a different footing. Stockholders who have paid their stock in full are not liable for debts of the corporation. More frequently than otherwise, agents of corporations do not keep the shareholders fully informed of its financial condition, so that when a failure occurs, such stockholders feel under no obligation to go down into their private purses to pay the employees; and being under no legal duty to do so, they allow the laborers to go empty handed.

"The foregoing reasons furnish ample warrant to the legislature for its action in making a separate class of those persons who labor for corporations." (pp. 366, 370.)

Such legislation does not trench on our local constitution, nor does it violate the fourteenth amendment or any other provision of the federal constitution. The federal supreme court has sustained such statutes which apply only to railway corporations (*St. Louis, Iron Mountain &c. Railway Co. v. Paul*, 173 U. S. 404, 43 Law Ed. 746); and certainly a statute of this character which includes all corporations is less open to possible objection under the federal constitution than one which only affects a limited and special class of corporations. See, also, *Wynne v. Railway*, 96 S. C. 1; Ann. Cas. 1916 B, 133 and notes.

In support of the judgment, however, it is urged that plaintiff failed to designate the place of payment as provided by the first section of the act of 1911 (§ 5880). But that point was not fairly raised by the demurrer, and the trial court's ruling on the demurrer was placed squarely and exclusively on the ground—

"That the provisions of section 5880 and section 5881, General Statutes of 1915, and chapter 221, Session Laws of 1919, are in violation of the provisions of the fourteenth amendment to the constitution of the United States, and that plaintiff is not entitled to recover under said sections."

The case below never got far enough to develop the sufficiency of plaintiff's designation of a place of payment, if that be an absolute prerequisite to recovery. All the records show is that on the 11th day of March, 1921, plaintiff sent to the said Hal W. Neiswanger, president of the defendant, the following telegram:

"You laid me off March 1st. Have not received check yet and I am on the pay roll until I get check—need the money.          R. B. Livingston."

This telegram might signify that a check by mail would satisfy plaintiff, and may have been defendant's customary mode of payment.

We note that a rather uncertain class of employers, "firms," is included in the statute. Who they may be, and the validity of the statute as to them, are questions which cannot be determined until some "firm" is subjected to its provisions.

No unconstitutional infirmities inhere in the act of 1911 (Gen. Stat. 1915, §§ 5880, 5881), so far as the rights of the defendant are concerned; and the judgment is therefore reversed and remanded for further proceedings.