No. 36,708

BONNY HINDS, FRANKIE E. STORM and WANDA NIXON, *Appellees,* v. IDA FINE, *Appellant.*

(176 P. 2d 847)

Opinion filed January 25, 1947.

*Austin M. Cowan,* of Wichita, argued the cause, and *W. A. Kahrs, Robert Nelson* and *H. F. Hudson,* all of Wichita, were with him on the briefs for the appellant.

*John Jay Darrah, Dale Kidwell* and *Robert B. Morton,* all of Wichita, were on the briefs for the appellees.

*William Remy,* Deputy Administrator for Enforcement, *David London,* Director, Litigation Division, *Albert M. Dreyer,* Chief, Appellate Branch, and *Arthur G. Silverman,* Special Appellate Attorney, Office of Price Administration, all of Washington, D. C., and *Leonard M. Cox,* Regional Litigation Attorney, Office of Price Administration, of Dallas, Tex., *James B. Nash,* District Enforcement Attorney, and *Lawrence J. Wetzel,* Special Trial Attorney, both of Wichita, were on the briefs for Paul A. Porter, Administrator, O. P. A., · *Amicus Curiae.*

The opinion of the court was delivered by

SMITH, J.: This action was commenced in the city court of Wichita to recover judgment for $820 under the terms of the Emergency Price Control Act of 1944. Judgment was for plaintiffs. The defendant has appealed.

The petition in the city court first pleaded section 205 (*e*) of the Emergency Price Control Act (56 Stat. 23, as amended by 58 Stat. 632; 50 U. S. C. App. § 925 [e]). The action was brought pursuant to the act, which, among other things, provided that where any person violated a price schedule providing a maximum charge the buyer might bring an action on account of the overcharge and that "in such action the seller shall be liable for reasonable attorney's fees and costs, as determined by the court . . ." plus whichever of certain sums set out was the greater. Then followed a provision for the recovery of three times the amount of overcharge'unless the seller should prove that the overcharge was neither willful nor the result of failure to take practical precautions against the occurrence of the violation. Next it provided that an order as to rents should be regarded as a price control order. The act then contained the following proviso:

"Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction." (58 Stat. 641.)

The petition then alleged that the plaintiffs were tenants of the defendant in an apartment at an agreed rental of $60 per month; that the maximum registered rental price for that apartment was $40 a

month; that by reason of the overcharges defendant had collected an excess over the maximum required rent in the amount of $20 per month for seven months or $140 and that plaintiffs were entitled to judgment against the defendant for three times the amount of the overcharge, or $420, and reasonable attorney's fees. The prayer was for judgment for $420 and for attorney's fees in the amount of $250. At the trial in city court defendant's demurrer to the plaintiffs' evidence was sustained. The plaintiffs appealed to the district court. The notice of appeal stated that plaintiffs appealed from the judgment, orders, rulings and decisions of the court in the action and specially from the judgment sustaining the demurrer. Two appeal bonds were filed—one was signed by Bonnie Hinds and Wanda Nixon, plaintiffs, and Gerald H. Grange and Julia Gay Nielson, sureties, and the other was signed by Bonnie Hinds, Frankie N. Storm, another plaintiff, and the same sureties. The plaintiffs filed a motion in the district court to require the defendant to file written pleadings. This motion was sustained. The defendant filed a motion to dismiss the appeal for the reason that it was not made in the manner provided by law. That motion was overruled. The defendant's answer contained allegations to the effect that she had not made an overcharge and that if she had it was not willful on her part. She also alleged that plaintiffs did not appeal from the Wichita city court in the manner provided by law, and that in plaintiffs' notice of appeal they appealed from the court's ruling on the demurrer, and did not state whether it was from the ruling on the demurrer to the original bill of particulars or her demurrer to the evidence, and that they did not say they appealed from the final judgment dismissing the plaintiffs' case. She also alleged that plaintiffs had posted two appeal bonds and because of the foregoing the appeal did not conform to the statutes and was void and the action should be dismissed.

At the trial the jury returned a verdict in favor of plaintiffs in the amount of $340. It answered special questions to the effect that it allowed plaintiffs $140 on account of overcharge and $200 as attorney's fees.

Motion for a new trial was overruled. Judgment was entered for the plaintiffs in the amount of the verdict. The defendant has appealed.

The defendant set out eleven specifications of error. The principal one, however, is that the court erred in not dismissing the action on motion of the defendant since it did not have power, sitting as a justice of the peace court on appeal from such court, to de-

termine and render judgment for attorney's fees as it was a court of limited statutory jurisdiction on which the statutes did not confer power to fix and allow attorney's fees. There was a further specification of error that the district court erred in not dismissing plaintiffs' appeal because the appeal was not made and perfected in the manner provided by law. This specification was based on the fact that two separate appeal bonds were filed instead of one, and that in their notice of appeal plaintiffs stated they were appealing from the order of the city court sustaining a demurrer to the evidence rather than from a final judgment.

We shall first notice the argument of the defendant that the district court did not have power, sitting as a justice of the peace on appeal from such court, to give judgment for attorney's fees.

All parties concede that where a matter is appealed to the district court from the justice court the district court takes only such jurisdiction and power as the justice had in the first instance. (See *McCracken v. Wright,* 159 Kan. 615, 157 P. 2d 814; also *Ohio Hydrate & S. Co. v. H. W. Underhill C. Co.,* 141 Kan. 213, 40 P. 2d 337.)

The Emergency Price Control Act provides that the action to recover for overcharge and attorney's fees may be brought in any court of competent jurisdiction. We have held that such an action even though it is provided for by a federal statute may be brought in one of our state courts provided the court possesses the requisite jurisdiction of the subject matter and jurisdiction to give the relief sought, in other words, is a "court of competent jurisdiction." (See *Thomas v. Chicago B. & Q. Rld. Co.,* 127 Kan. 326, 273 Pac. 451; also *Graves v. Armstrong Creamery Co.,* 154 Kan. 365, 118 P. 2d 613.)

Whether a particular state court has jurisdiction of the subject matter and to grant the relief prayed for depends upon the local law. The question was considered in several cases reported as *Second Employers' Liability Cases,* 223 U. S. 1. These were several actions for damages brought against different common carriers in state courts pursuant to the Employers' Liability Act. In considering the question of whether congress could provide that rights could be enforced in a state court the Supreme Court of the United States said:

"We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the Federal courts. The act contains nothing which is suggestive

of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act, 'That the circuit courts of the United States shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the Constitution or laws of the United States.' August 13, 1888, 25 Stat. 433, c. 866, § 1. *Robb v. Connolly,* 111 U. S. 624, 637; *United States v. Barnes,* 222 U. S. 513. This is emphasized by the amendment engrafted upon the original act in 1910, to the effect that 'The jurisdiction of the courts of the United States under this Act shall be concurrent with that of the courts of the several States, and no case arising under this Act and brought in any state court of competent jurisdiction shall be removed to any court of the United States.' The amendment, as appears by its language, instead of granting jurisdiction to the state courts, presupposes that they already possessed it.

"Because of some general observations in the opinion of the Supreme Court of Errors, and to the end that the remaining ground of decision advanced therein may be more accurately understood, we deem it well to observe that there is not here involved any attempt by Congress to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure, but only a question of the duty of such a court, when its ordinary jurisdiction as prescribed 'by local laws is appropriate to the occasion and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of civil recovery arising under the act of Congress and susceptible of adjudication according to the prevailing rules of procedure. We say 'when its ordinary jurisdiction as prescribed by local laws is appropriate to the occasion,' because we are advised by the decisions of the Supreme Court of Errors that the Superior Courts of the State are courts of general jurisdiction, are empowered to take cognizance of actions to recover for personal injuries and for death, and are accustomed to exercise that jurisdiction, not only in cases where the right of action arose under the laws of that State, but also in cases where it arose in another State, under its laws, and in circumstances in which the laws of Connecticut give no right of recovery, as where the causal negligence was that of a fellow-servant." (p. 56.)

This brings us to the question of whether under our constitution, statutes and decisions, the City Court of Wichita had jurisdiction of an action such as this to recover the amount of an overcharge and attorney's fees as provided for by the Federal Price Control Act. Defendant argues that it did not have such jurisdiction and relies in a large measure on *Hopkins v. Barnhardt,* 223 N. C. 617, 27 S. E. 2d 644. That was an action brought before a justice of the peace to recover attorney's fees by reason of an alleged violation of the Emergency Price Control Act. Judgment was for the plaintiff in the justice court for the amount of the overcharge and attorney's fees.

On appeal to the superior court the same judgment was entered. The question with which we are concerned was not raised by the parties on appeal to the Supreme Court of North Carolina but that court raised it on its own motion. The court first demonstrated that justices of the peace were limited in their authority and jurisdiction by the constitution and the statutes of the state. The court then pointed out that an action to recover a penalty is an action *ex contractu*, of which the justice court would have jurisdiction provided the amount claimed was within the statutory limit. The court then said "We know of no statute authorizing justices of the peace to fix and award attorneys' fees in any proceeding. Nor can it be held that a justice of the peace has the inherent or equitable power to fix and award such fees." From what is said further in that opinion we gather that the court viewed the matter from the standpoint of equity and equity powers. The only cases in which it appeared to the North Carolina Supreme Court that any court could allow attorney's fees was in the exercise of chancery power or by express statute, and the court said they were usually awarded out of funds in the custody of the court or out of the sum recovered in the litigation in which the attorney was employed. We have no quarrel with the decision in *Hopkins v. Barnhardt,* supra, that justices of the peace have no equity powers. Such is the rule in this state. If they have jurisdiction to award attorney's fees the power is conferred by statute as construed by us. We shall examine our pertinent statutes, constitutional provisions and our opinions from that point of view.

The city court of Wichita was created by chapter 130 of the Laws of 1899. The statute, as amended, is now found in G. S. 1935 and G. S. 1945 Supp., 20-2001 to 20-2025, inclusive. Section 20-2002, G. S. 1945 Supp., among other things, contains the following provisions:

"The court . . . shall . . . have original jurisdiction in civil actions for the recovery of money only, and to try and determine the same, where the amount claimed does not exceed one thousand dollars; . . . In all other respects the said court hereby established shall have the same jurisdictions, civil and criminal, as justices of the peace now have in this state; and for the purpose of the jurisdiction, hereby conferred, and of its proper and necessary exercise, all the laws of this state relating to the powers, duties and jurisdiction of justices of the peace and practice, pleadings and proceedings in justice courts which are not in conflict with the provisions of this act shall apply to said city court and the judge thereof and to the mode of practice therein, and to the power thereof, original, mesne, and final, so far as the same may be applicable."

It will be seen that from the outset the city court was given general power, authority and jurisdiction of a justice of the peace. Justices of the peace were provided for in the constitution. Section 9 of article 3 provides, in part, as follows:

"Two justices of the peace shall be elected in each township . . . whose powers and duties shall be prescribed by law."

The powers and duties of justices of the peace were provided for in chapter 81 of the General Statutes of 1868. Section 2 of that chapter provided, in part, as follows:

"The justices of the peace shall have jurisdiction and authority: . . . *Eleventh,* Under the restrictions and limitations herein provided, to have exclusive original jurisdiction of civil cases where the amount claimed does not exceed one hundred dollars, and concurrent jurisdiction with the district court in actions on contract, express or implied, for the recovery of money only, when the amount claimed exceeds one hundred dollars, and does not exceed three hundred dollars."

Thus it will be noted that from the beginning justices of the peace and the city court of Wichita had jurisdiction generally of actions for the recovery of money, the only limitation being as to the amount involved.

Old statutes are always interesting. These, however, are especially so to us here on account of another legislative policy developed early in our state, to which attention will now be called.

Ordinarily attorney's fees may not in the absence of statute be recovered in actions for the recovery of money. Our legislature initiated the policy to which reference was just made in the enactment of chapter 94 of the Laws of 1874. Section 1 of that act provided that a railway company should be liable for killing animals in the operation of the railway irrespective of negligence of either party. Section 2 provided that upon failure of the company to pay on demand the owner might sue and recover the value of the animal or damages with a reasonable attorney's fee for the prosecution of the suit in any court of competent jurisdiction in the county. *Gulf Rld. Co. v. Shirley,* 20 Kan. 660, was an action by a farmer to recover damages for stock killed by the railway company in its operation. The actions were commenced in justice court, where judgment was for the defendant. On appeal to the district court judgment was for plaintiff. A question was raised on appeal to this court about the power of the district court to allow any attorney's fees to the plaintiff for services performed in the justice

court since plaintiff was defeated there. On that question this court said:

"In the latter court judgments were rendered in favor of the plaintiffs for the value of the stock killed, and attorney-fees in the justice's as well as the district court. And this presents the first question. Where the stock-owner is defeated in the trial before the justice, and appeals to the district court, can he, if successful in the latter court, recover anything for the services of his attorney in the trial before the justice? We think he may. The statute provides that the owner may recover from the railway company the value, 'together with a reasonable attorney-fee for the prosecution of the suit.' Now the judgment finally rendered on the appeal established the fact of plaintiff's right to recover, and that upon the merits of the controversy the justice erred. The attorney-fee is for the prosecution of the suit; and this covers the entire prosecution from the commencement until its final termination in the district court. The company was in the wrong for not paying the claim. Its wrong compelled the action. The skill and ability of its counsel delayed the plaintiff in his recovery. Should it profit by causing this delay? Suppose such skill and ability should prolong the contest in the district court, hang one jury, secure an adverse verdict from another, and only be defeated after a long and wearisome litigation; would it be right that the plaintiff should recover no larger attorney-fee than if without struggle it had suffered the party to take the judgment to which he was entitled? The extent of the litigation, as well as the amount in controversy, is an important factor in determining the proper fee to be awarded. It must be a 'reasonable fee'—reasonable, considering all the elements in the particular case which affect the proper amount of the attorney's compensation. The law may be a stringent one. Perhaps its very stringency was necessary to make it adequate protection to those who are sought to be protected by it; or it may be, that it is unwisely and needlessly stringent. But these matters are for legislative consideration. The question with the courts is one of power, and not of policy. And that question having been solved heretofore in favor of the law, it only remains to apply its various provisions to the cases as they arise." (p. 661.)

This court had considered the constitutionality of this act in *K. P. Rly. Co. v. Mower*, 16 Kan. 573. The general provisions were upheld as a proper exercise of the police power. The defendants argued also that the provision as to the plaintiff being entitled to an attorney's fee, if he was successful in the litigation, while denying the same right to the defendant, violated the constitutional provision guaranteeing equal rights to all. In dealing with that argument this court upheld the provision, and said:

"We do not think the contention of counsel can be sustained. While the law may be harsh and rigorous, (and yet its rigor may have seemed to the legislature as essential to its value, for, if a claimant for stock killed was compelled to pay his own attorney's fees, it might well happen that in all

cases the amount of his claim—such amounts being uniformly small—would be consumed by attorney's fees, and so leave the claimant in no better condition than before,) we see no reason to hold it beyond the power of the legislature. It is no uncommon thing for legislatures to provide, in cases where a failure to pay seems to imply more than ordinary wrong, that such failure should carry with it something in the nature of a penalty. Sometimes double or treble damages are given. The Iowa stock-law gave double damages. Our trespass act provides for both double and treble damages; (Gen. Stat. p. 1095, §§ 1 and 2.) Ten percent may sometimes be added in the discretion of the court. Other illustrations might be suggested. Some other matters are suggested, but it is unnecessary to prolong this opinion. We are of opinion that the act is constitutional, and applicable to the plaintiff in error." (p. 582.)

These actions were both commenced in justice court. We quote them here not merely because in *Gulf Rld Co. v. Shirley*, supra, this court held that the district court on appeal from the justice court allowed attorney's fees for services performed by attorneys for the plaintiff in justice court, but on account of the reason given, that is, that the attorney's fee was a penalty provided by the statute for the benefit of the plaintiff. The reason given is persuasive upon us in this appeal. This is also true of *K. P. Rly Co. v. Mower*, supra.

*St. L. & S. F. Rly Co. v. Curtis*, 48 Kan. 179, 29 Pac. 146, also, *Mo. Pac. Rly Co. v. Henning*, 48 Kan. 465, 29 Pac. 597, were both actions brought pursuant to what is now G. S. 1935, 66-232 and 66-233. They were both commenced in justice court.

That section was enacted in 1885. It provided that the owner of property destroyed or damaged on account of the operation of a railroad could recover therefor regardless of his contributory negligence. It also provided that "in all actions commenced under this act, if the plaintiff shall recover there shall be allowed him by the court, a reasonable attorney's fee, which shall become a part of the judgment." The plaintiff recovered in *St. L. & S. F. Rly Co. v .Curtis*, supra, more for attorney's fee than was asked in the bill of particulars. On appeal this court reduced the attorney's fee allowed to what was prayed for.

In *Mo. Pac. Rly. Co. v. Henning*, supra, the defendant complained because there was insufficient evidence as to the value of the services of the attorney for plaintiff. This court upheld the allowance and stated further:

"The attorney's fees are made a part of the judgment by the plain words of the statute, and they are payable to the plaintiff, and not to the attorneys." (p. 470.)

Defendant realizes that these actions were brought in the justice court in the first instance for damages including an attorney's fee and allowed by the district court on appeal. She argues, however, the question she is pressing here was not raised—hence the cases are not in point. It is true the precise question was not raised, at least it was not dealt with in the opinion. It would be a little surprising if this precise question had not been raised since it was settled apparently so conclusively by the court in the two cases heretofore cited. The point is the attorney's fee was always regarded as part of the recovery for which the plaintiff was allowed to bring suit in certain cases provided by statute, and always for the same reason. See, also, *Abbey v. Railway Co.*, 108 Kan. 85, 194 Pac. 190, also, *Machinery Co. v. Smith*, 87 Kan. 331, 124 Pac. 414.

It will be noted that in both the above cases this court sustained the constitutionality of the provision for attorney's fees on the ground that it was in the nature of a penalty for failure to fence. (See, also, 11 A. L. R. note 884.)

*Hopkins v. Barnhardt*, supra, holds that an action for a penalty is an action *ex contractu* and hence one of which a justice of the peace has jurisdiction.

In *Livingston v. Oil Co.*, 113 Kan. 702, 216 Pac. 296, we dealt with two statutes having to do with a corporation's duty to pay its employees promptly when discharged. Two statutes were involved, each providing for a penalty when an employee was discharged and not paid at once. The first of these excepted from its terms steam surface railway companies and all corporations engaged in the production of farm and dairy products. We held that such a provision rendered the act unconstitutional.

The other act provided that when an employee was not paid upon written demand when discharged, then as a penalty for such nonpayment the wages of the employee should continue from the date of discharge until paid, provided that such wages should not continue for longer than sixty days unless action should have been commenced. We upheld this statute, and said:

"Is there any constitutional infirmity in this statute to justify the trial court's ruling on the demurrer? While the statute does say that the continued allowance of wages after discharge is a penalty, we think it is essentially compensatory in its nature, as discussed above. It is a private wrong to turn off a workman without his pay. It is particularly a grievous thing for a corporation to do so. A corporation is an intangible entity, with

many officials and functionaries. A laborer is oft-times mystified in attempting to deal with its numerous responsible heads. He may go from superintendent to manager and from manager to president, if these can be reached, only to be put off or sent on tedious or fruitless journeys to see other functionaries of the corporation before he can get his pay." (p. 707.)

This case is of interest to us here because it indicates that this court from the beginning has treated statutes such as this which provide for a recovery by an individual of more than is actually due, as for the benefit of the person wronged, and the amount of the penalty is simply an additional amount to be recovered by him.

Once we reach the conclusion that the attorney's fee is a penalty, and that penalties may be recovered in an action as a part of the sum actually due, then the conclusion that a justice court or city court has jurisdiction to give a judgment for attorney's fees naturally follows.

The Emergency Price Control Act is analogous to the two statutes on which we have commented. It was enacted for the benefit of people who ordinarily do not have attorneys on their pay roll. The amounts due would in many instances be small. Had there not been a provision for penalties and attorney's fees landlords would in many instances have been able to violate the schedule with impunity because the amount at issue would have been too small to bother with. The reason given in *Gulf Rld. Co. v. Shirley*, supra, for holding that attorney's fees in a statute such as this are penalties for the benefit of the plaintiff, exists here. We agree with the conclusion reached by the trial court on this point.

Defendant also argues that the plaintiffs' appeal to the district court should have been dismissed because two appeal bonds were filed, one signed by one of the plaintiffs and two sureties and the other by two of the plaintiffs and the same two sureties. The pertinent statute is G. S. 1935, 61-1002. That section provides, in part, as follows:

"The party appealing shall file a good and sufficient bond in the court from which the appeal is taken to secure the costs of the appeal . . ."

Here there were three appellants and a joint appeal. We hold that the two bonds were a sufficient compliance with the statute.

Defendant next argues that the plaintiffs' appeal should have been dismissed because in the notice of appeal the plaintiffs stated they were appealing from the "judgment, orders, rulings, and de-

cisions of the court in the above action . . . and especially from the judgment sustaining the demurrer of the defendant . . . announced . . . on the 22d day of October, 1945." The record states that "on October 22, 1945, the appellant's demurrer to the plaintiffs' evidence was sustained and upon this being done the case was dismissed at the cost of the plaintiffs." Defendant's point here is that the notice of appeal should have stated that the appeal was being taken from the order dismissing the action at the cost of the plaintiffs rather than from the order sustaining a demurrer to plaintiffs' evidence. We have concluded that the order dismissing the action followed as matter of course the order sustaining the demurrer to plaintiffs' evidence and the notice of appeal was sufficiently definite that there was no question as to the finality of the judgment from which the appeal was taken.

The judgment of the trial court is affirmed.