STATE v. J. B. & R. E. WALKER, Inc., et al.

No. 6179.   Decided September 10, 1941.   (116 P. 2d 766.)

See 39 C. J. Master and Servant sec. 330.

For constitutionality of statute regulating time of payment of wages, see notes to 12 A. L. R. 1396.

See also 31 Am. Jur. 1088 et seq.

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Zelph S. Calder* and *Zar E. Hayes,* Asst. Attys. Gen., for respondent.

McDONOUGH, Justice.

Appellant, R. E. Walker, was found guilty in the district court of the crime of failing to pay wages, in violation of Section 12, Chapter 60, Laws of Utah 1937. The complaint charged the violation of that portion of said Section 12 which provides that

"any employer who, shall refuse to pay the wages due and payable when demanded, as in this act provided, or who shall falsely deny the amount thereof, or that the same is due, with intent to secure for himself, or any other person, any discount upon such indebtedness, with intent to annoy, harass, oppress, hinder, delay or defraud, the person to whom such indebtedness is due, * * * shall in addition to any other penalty imposed upon him by this act, be guilty of a misdemeanor, punishable by a fine of not less than $50 and not exceeding $100." Subd. c.

The act requires payment of wages to employees semi-monthly, in lawful money of the United States, except where an employee is hired on a yearly salary basis, in which case payment may be made monthly; and, in effect, requires on demand immediate payment of wages upon discharge or resignation of an employee.

Section 4 of Chapter 60, supra, provides:

"None of the provisions of this act shall apply to employers or employees engaged in farm, dairy, agricultural, viticultural or horticultural pursuits or to banks and mercantile houses, or to stock or poultry raising or to household domestic service."

This appeal was taken from a judgment, made and entered pursuant to a verdict of guilty, on the sole ground that the law upon which the conviction was based is unconstitutional in that by virtue of the exclusion provisions of Section 4, just quoted, the legislature enacted a special law which denies to appellant the equal protection of the law in violation of both the Constitution of this state and the Constitution of the United States.

Appellants main contention centers around that part of Section 4 which excludes from the operation of the act "banks and mercantile houses," it apparently being conceded that the exclusion of agricultural and domestic employment from the operation of labor laws generally has been upheld almost uniformly. The question is, therefore, narrowed to whether the exclusion of "banks and mercantile houses" does constitute the act discriminatory class legislation.

Although many states have passed legislation with respect to the payment of wages, our statute appears to be unique in expressly excluding from the operation thereof "banks and mercantile houses." Nor does the history of the enactment of the legislation reveal definitely just why such exclusion was made.

The original statute in this state on payment of wages was enacted in 1919, Laws of Utah 1919, Chapter 71. The bill as introduced, Senate Bill 61, did not contain the phrase "banks and mercantile houses" in the excluding provision of the act. However, that phrase was inserted as an amendment from the floor of the Senate before the bill was passed. And an additional excluding phrase was also added immediately following "banks and mercantile houses," to wit:

"Or other employment where an agreement exists between an employer and employee providing for different terms of pay."

The statute, as passed, continued until the Revised Statutes of Utah 1933 were enacted. At that time the phraseology of the ecluding section of the statute was changed slightly to read as follows (Section 49-9-8, R. S. U. 1933):

"None of the provisions of this chapter shall apply to the state, or to any county, incorporated city or town, or other political subdivision, or to employers and employees engaged in farm, dairy, agricultural, viticultural or horticultural pursuits, or to banks and mercantile houses, or to stock or poultry raising, or to household domestic service, or to any other employment, where an agreement exists between employer and employee providing for different terms of payment."

This statute continued in force until the enactment of the law under consideration in 1937.

This 1937 statute did not have any "excluding" provision as it was originally introduced and passed by the House (House Bill 11). The Senate, however, made certain amendments relative to the application of the bill to certain types of labor. An amendment was made first excluding from the operation of the bill "employees of the federal or state government or any political subdivision of the state government." Then was added the words "nor to any of the following businesses and industries, agriculture, livestock and mercantile." This latter phrase was immediately amended by striking the words "and mercantile."

The House refused to concur in the various amendments made by the Senate and it became necessary for the legislature to appoint three Conference Committees before an agreement could be reached with respect to the exclusion feature of the bill. As finally accepted the bill contained practically the same exclusion clause as did the old statute, except that the phrase "or to any other employment, where an agreement exists between employer and employee providing for different terms of payment," was omitted, as also was any reference to the state or its political subdivisions, the act being limited to private employments.

We discover, then nothing in the history of the legislation, nor in the proceedings relative to its enactment, which casts any light on the reason for excluding mercantile houses from its operation; though they do reveal that so excluding them was a matter giving rise to differences of opinion, if not of recorded debate.

Appellant's contention as noted is the exclusion of "banks and mercantile houses" renders the statute unconstitutional as discriminatory class legislation. Cases in support of such contention are cited: An Illinois statute was declared unconstitutional as class legislation in *Braceville Coal Co.* v. *People*, 147 Ill. 66, 35 N. E. 62, 22 L. R. A. 340, 37 Am. St. Rep. 206. The statute there applied to every "manufacturing, mining, quarrying, lumbering, mercantile, street, electric and elevated railway, steamboat, telegraph, telephone and municipal corporation and every incorporated express company and water company." Act April 23, 1891. It was held invalid because it did not apply "to all corporations existing within the state" but excluded several without any apparent reasonable basis. In Indiana several statutes relating to payment of wages have been held unconstitutional: *Dixon* v. *Poe*, 159 Ind. 492, 65 N. E. 518, 60 L. R. A. 308, 95 Am. St. Rep. 309 (the act invalidated applying only to merchants and laborers in coal mines) ; *Toledo, St. L. & W. R. Co.* v. *Long*, 169 Ind. 316, 82 N. E. 757, 758, 124 Am. St. Rep. 226 (where the statute applied to every "company, corporation or association" and required only that such businesses pay "employees, engaged in manual or mechanical labor" at least once a month) ; *Smith* v. *Ohio Oil Co.*, 43 Ind. App. 735, 86 N. E. 1027, affirming the position taken in *Toledo, St. L. & W. R. Co.* v. *Long,* supra; *State* v. *Martin,* 193 Ind. 120, 139 N. E. 282, 26 A. L. R. 1386 (in which the penalty provision was held to render the statute unconstitutional) ; and *Superior Laundry Co.* v. *Rose,* 193 Ind. 138, 137 N. E. 761, 139 N. E. 142, 26 A. L. R. 1392 (where the court reviewed the several different statutes passed by the Indiana legislature and pointed out the classifications which rendered most of them unconstitutional).

In *State* v. *Potomac Valley Coal Co.*, 116 Md. 380, 81 A. 686, a statute applying only to corporations engaged in mining coal or fire clay in Garrett County was held unconstitutional. In *Sorenson* v. *Webb,* 111 Miss. 87, 71 So. 273, one applying only to manufacturers and no other classes or individuals or corporations was likewise held unconstitutional. *Anderson* v. *Uncle Sam Oil Co.*, 106 Kan. 483, 186 P. 198, involved a statute, held unconstitutional, which excluded steam surface railroads as well as corporations engaged in the production of farm and dairy products from its operation. With such exceptions, it applied to all corporations. The statute, however, made all corporations, with the exception noted, liable for a reasonable attorney's fee, when suit was successfully maintained under the act for the collection of wages. This view was affirmed in a later Kansas case, *Livingston* v. *Susquehanna Oil Co.*, 113 Kan. 702, 216 P. 296. See, also, *State* v. *Barba*, 132 La. 768, 61 So. 784, 45 L. R. A., N. S., 546, Ann. Cas. 1914D, 1261; *State* v. *LeBarron,* 24 Wyo. 519, 162 P. 265, Ann. Cas. 1918D, 998.

On the other hand, are many cases upholding as constitutional various classifications in statutes requiring prompt payment of wages. In New York the statute provides a different time for payment of employees on steam surface railroads (twice a month) than for employees in most other corporations (once a week). This statute was upheld in *New York Cent. & H. R. R. Co.* v. *Williams,* 199 N. Y. 108, 92 N. E. 404, 409, 35 L. R. A., N. S., 549, the court stating:

"The discussion thus far has related to the contention of the appellant that the enactments in question deprive the parties of liberty and property without due process of law. The objection that they operate as a denial of the equal protection of the laws is equally untenable. A classification of corporations with reference to their relations to the public is manifestly reasonable. No other corporations occupy precisely the same relation to the public as steam surface railroad companies, and the fact that no other corporations may have been subjected to the same requirement in respect to the payment of wages does not invalidate the requirement. As long as the classification has a basis in reason, and all corporations of the same class

are treated alike, the action of the Legislature may not be condemned by the courts for inequality."

In *People* v. *Interborough Rapid Transit Co.*, 169 App. Div. 32, 154 N. Y. S. 627, and in *People* v. *Grass*, 257 App. Div. 1, 11 N. Y. S. 2d 803, 805, it was further brought to light that the New York Statute, in addition to requiring different times of payment for industries also classified the "employes" who were to receive the benefits of such act by defining the term "employe" as "a mechanic, workingman or laborer working for another for hire."

A Missouri statute providing that "all corporations doing business in this state, which shall employ any mechanics, laborers or other servants, shall pay the wages of such employes as often as semi-monthly," Laws Mo. 1911, p. 150, § 1, was upheld as constitutional. *State* v. *Missouri Pac. R. Co.*, 242 Mo. 339, 147 S. W. 118; *State* v. *Missouri K. & T. Ry. Co.*, 242 Mo. 380, 147 S. W. 130; *Smith* v. *Townley Mfg. Co.*, Mo. Sup., 218 S. W. 870.

And a statute very similar in terms to the Missouri statute was upheld by the Arkansas Supreme Court in *Arkansas Stave Co.* v. *State*, 94 Ark. 27, 125 S. W. 1001, 27 L. R. A., N. S., 255, 140 Am. St. Rep. 103.

In *State* v. *Cullom*, 138 La. 395, 70 So. 338, followed in *State* v. *McCarroll*, 138 La. 454, 70 So. 448, the court held a statute constitutional where it applied only to industries having ten or more employees.

In *Lawrence* v. *Rutland Railroad Company*, 80 Vt. 370, 67 A. 1091, 15 L. R. A., N. S., 350, 13 Ann. Cas. 475, a Vermont statute was involved which provided that

"a mining, quarrying, manufacturing, mercantile, telegraph, telephone, railroad or other transportation corporation, and an incorporated express, water, electric light or power company doing and transacting business in the state, shall pay each week." Laws Vt. 1906, No. 117.

This statute was upheld as not being class legislation. Compare the statute here involved with the statute held unconstitutional in *Braceville Coal Co.* v. *People*, supra.

In *Seeleyville Coal & Mining Co.* v. *McGlosson*, 166 Ind. 561, 77 N. E. 1044, 117 Am. St. Rep. 396, 9 Ann. Cas. 234, an Indiana statute which required employers engaged in mining or in manufacturing any article of merchandise to pay their employees every two weeks was held to be constitutional. (Compare with other Indiana cases heretofore cited.)

For other classifications, see *Wynne* v. *Seaboard Air Line Ry.*, 96 S. C. 1, 79 S. E. 521, Ann. Cas. 1916B, 133; *Withey* v. *Bloem*, 163 Mich. 419, 128 N. W. 913, 35 L. R. A., N. S., 628.

The foregoing and other cases are discussed in annotations in 15 L. R. A., N. S., 350; 27 L. R. A., N. S., 255; 35 L. R. A., N. S., 549; 12 A. L. R. 612, 614. See, also, 16 R. C. L. 503, § 71.

The criteria which must guide us to a solution of the question in the instant case are not, in this jurisdiction, in doubt.

"A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act.

\* \* \*

"In order to see whether the excluded classes or transactions are on a different basis than those included, we must look at the purpose of the act. The objects and purposes of a law present the touchstone for determining proper and improper classifications.

\* \* \*

"It is only where some persons or transactions excluded from the operation of the law are as to the subject matter of the law in no differentiable class from those included in its operation that the law is discriminatory in the sense of being arbitrary and unconstitutional. If a reasonable basis to differentiate those included from those excluded from its operation can be found, it must be held constitutional." *State* v. *Mason*, 94 Utah 501, 78 P. 2d 920, 923, 924, 117 A. L. R. 330.

A basis for an approach to the problem here is the ■ rule enunciated in 12 Am. Jur. § 521, p. 217:

"Before a court can interfere with the legislative judgment, it must be able to say that there is no fair reason for the law that would not require with equal force its extension to others which it leaves untouched."

Can we say that any fair reason for the law in question which applies to employers and employees generally within the state would necessarily require its extension to banks and mercantile houses? We think not. In the case of *Carmichael* v. *Southern Coal & Coke Co.*, 301 U. S. 495, 57 S. Ct. 868, 877, 81 L. Ed. 1245, 109 A. L. R. 1327, the court said:

"In establishing a system of unemployment benefits the legislature is not bound to occupy the whole field. It may strike at the evil where it is most felt [citing numerous cases], or where it is most practicable to deal with it [citing cases]. It may exclude others whose need is less [citing cases], or whose effective aid is attended by inconvenience which is greater [citing cases].

"As we cannot say that these consideration did not lead to the selection of the classes of employees entitled to unemployment benefits, and as a state of facts may reasonably be conceived which would support the selection, its constitutionality must be sustained."

With such factors in mind we examine the classification here attacked to determine whether "a state of facts may reasonably be conceived which would support the selection." The evident purpose of the act is to assure to employees prompt payment, in lawful money of the United States, of the wages they are entitled to receive. The protection afforded the employee thereby is twofold: He is protected against a loss of the wages earned, which might attend upon payment thereof at long or irregular intervals, thus leaving him with a substantial, rather than a small, sum due him in case of the eventual inability or unwillingness of his employer to make payment; and it gives him rather

than his employer the use of his earnings at a reasonable time after they are earned.

In attempting to give the protection afforded the employee by the act, the legislature conceivably may have considered that in the classes included within the act, there are employed more seasonal or casual workers than in the excluded classes, which workers would be more greatly inconvenienced by delay in payment on conclusion of their services and who because of such kind of employment would be less able financially to secure necessities between less frequent paydays than those steadily employed. As to banks, the financial responsibility of the employer and the laws relative to banking reserves and bank examinations clearly might justify regarding their employees *as a class* to be better protected than any included group against loss of earnings, while the kind of workers employed might readily mark them as a group less in need of enforced frequent payment, than any other. As to mercantile houses, they carry on hand a stock of merchandise to which the employee could have recourse for eventual payment. Too, the fact that mercantile houses are dependent to a great extent in securing and retaining the good will of the buying public of a community and hence would to that end pay promptly the earnings of their workers, may have properly influenced the legislature in excluding them. Indeed, legislative investigation may have revealed that, whatever the motive actuating merchants, they do so pay and their employees are less in need of legislative aid than those in the included groups. We do not judicially know the contrary, and one who assails a legislative classification as arbitrary has the burden of showing it to be such.

A further reason for the exclusion suggests itself, namely: The merchandising houses which transact a credit business do so on a monthly basis; hence to require them to pay employees more frequently than monthly might well be "attended by inconvenience which is greater," than in other

occupations and prompt monthly payment, as pointed out, may have been found to be uniformly customary.

While there may be certain employees in banks and mercantile houses who do exactly the same work as some employees in other industries, and while there may be instances in which employees in banks or mercantile establishments are not adequately protected against loss of their wages, nevertheless such discrimination is only a result of the legislature not being able to make a perfect classification. As stated by the New York Court in *New York C. & H. R. R. Co.* v. *Williams,* supra:

"As long as the classification has a basis in reason, and all * * * *of the same class* are treated alike, the action of the Legislature may not be condemned by the courts for inequality." (Italics added.)

We are unable to say that the act evidences a mere arbitrary selection of the excluded classes. It follows that the judgment of the trial court should be affirmed. It is so ordered.

WOLFE and LARSON, JJ., concur.

MOFFAT, C. J., and PRATT, J., dissent.