CHICAGO AND NORTHWESTERN RAILWAY COMPANY, a corporation, plaintiff-petitioner, v. HONORABLE JOHN M. FACHMAN, a Judge of Sioux City Municipal Court, defendant-respondent.

No. 50956.

(Reported in 125 N.W.2d 210)

990

DECEMBER 10, 1963.

Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for plaintiff-petitioner.

Evan Hultman, Attorney General, and John H. Allen, Assistant Attorney General, for defendant-respondent.

LARSON, J.—This case arises as a result of the filing of a county attorney's information in the Municipal Court of Sioux City charging the Chicago and Northwestern Railway Company with a violation of the criminal provisions contained in sections 477.51 and 477.52, Code of Iowa, 1962. The court overruled the company's demurrer specifically attacking the constitutionality of those sections insofar as they undertook to create a criminal offense, on the ground that the information contained matter which would constitute a legal defense or bar to the prosecution. Section 777.2(2), Code, 1962.

Section 477.51 provides as follows:

"Every railway corporation operating or doing business in the state shall as often as semimonthly pay to every employee engaged in its business all wages or salaries earned by such employee to a day not more than eighteen days prior to the date of such payment. Any employee who is absent at the time fixed for payment, or who for any other reason is not paid at that time, shall be paid thereafter at any time upon six days demand, and any employee leaving his or her employment or discharged therefrom shall be paid in full following his or her dismissal or voluntary leaving his or her employment at any time upon six days demand. No corporation coming within the meaning of this section shall by special contract with the employees or by any other means secure exemption from the provisions of this section. Each and every employee of any corporation coming within the meaning hereof shall have his or her right of action against any such corporation for the full amount of his or her wages due on each regular pay day as herein provided in any court of competent jurisdiction of this state."

Section 477.52 provides as follows:

"Any corporation violating section 477.51 shall be deemed guilty of a misdemeanor and fined in a sum not less than twenty-five dollars, nor more than one hundred dollars, for each separate offense, and each and every failure or refusal to pay each employee the amount of wages due him or her at the time, or under the conditions required in section 477.51, shall constitute a separate offense."

Following the overruling of the demurrer, plaintiff herein commenced original certiorari proceedings in this court. It is respondent's contention, first, that certiorari was not the proper procedure to review the order overruling the demurrer, and second, that the statutes in the respect charged are not unconstitutional. We cannot agree in either respect.

■ I. By the weight of authority and better reasoning, the constitutionality of a statute under which a party is charged with a crime may be raised by demurrer. State v. Talerico, 227 Iowa 1315, 290 N.W. 660; State ex rel. Clinton Falls Nursery

Co. v. Steele County Board of Commrs., 181 Minn. 427, 232 N.W. 737, 71 A. L. R. 1190, and notes; Ocean Accident & Guarantee Corp. v. Poulsen, 244 Wis. 286, 12 N.W.2d 129, 152 A. L. R. 810, and citations; 4 Wharton's Criminal Law and Procedure (Twelfth Ed.), section 1872; 11 Am. Jur., Constitutional Law, section 126. Respondent concedes this proposition as well as the proposition that certiorari is the proper remedy for determining whether the lower court has acted illegally or exceeded its jurisdiction. Rule 306, R. C. P.; Hohl v. Board of Education, 250 Iowa 502, 508, 94 N.W.2d 787, and citations.

It is respondent's contention, however, that certiorari is not proper procedure for reviewing the lower court's order overruling a demurrer to an information simply because the demurrer challenged the constitutionality of the criminal statute involved. Respondent argues, that by filing its demurrer and arguing the same it invoked the jurisdiction of the court and, although the court's ruling on the demurrer may have been erroneous, the proper and only method of review available to the company was then by appeal. The contention is without merit. Usually jurisdiction of the subject matter cannot be conferred by consent. Stucker v. County of Muscatine, 249 Iowa 485, 490, 87 N.W.2d 452; Hulburd v. Eblen, 239 Iowa 1060, 1064, 33 N.W.2d 825, 827, and citations. Since filing a demurrer was the only statutory procedure available to the company by which it could challenge the court's jurisdiction of the subject matter, we cannot find therein any consent to such jurisdiction even if it could have been given. Section 777.1, Code of 1962.

As we understand it, respondent contends that since the company could not appeal until a final judgment was rendered (section 793.2 of the Code), it must plead to the charge and stand trial before a review could be had in this court. It cites as authority therefor State v. Anderson, 245 Iowa 99, 60 N.W.2d 794. For several reasons this is not the law in this jurisdiction.

It was pointed out at page 102 in the Anderson case: "The Rules of Civil Procedure provide a writ of certiorari may issue where a tribunal is alleged to have exceeded its proper

jurisdiction or otherwise acted illegally. R. C. P. 306. * * * The statute here involved, section 793.2, Code of Iowa, which provides an appeal in a criminal case can only be taken from the final judgment, refers to appeals only. It does not apply to proceedings in certiorari."

Furthermore, it is pointed out in Stucker v. County of Muscatine, supra, loc. cit. 489 of 249 Iowa, that if there were adjudications on jurisdictional merits, the determinations were final adjudications. Martin Bros. Box Co. v. Fritz, 228 Iowa 482, 292 N.W. 143; Scott v. Scott, 174 Iowa 740, 156 N.W. 834.

All authorities cited by respondent precede the adoption of the Iowa Rules of Civil Procedure, which deleted a former requirement for such a writ, i.e., that there was a lack of a plain, speedy and adequate remedy at law, so by rule we may now consider a jurisdictional question by way of a writ when "an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded its or his proper jurisdiction or otherwise acted illegally." R. C. P. 306.

 It is Hornbook law that a court must have jurisdiction of both the parties and the subject matter before it can validly act, and jurisdiction of the subject matter must be derived from a valid statute. When a court attempts to act under an unconstitutional statute, all proceedings based thereon are void. In the recent case of Knott v. Rawlings, 250 Iowa 892, 898, 96 N.W.2d 900, 73 A. L. R.2d 868, an indictment attacked by demurrer was overruled. As in the case at bar, an original certiorari action was brought before us, and we sustained the writ holding certiorari was a proper remedy to determine the legality of the court's action in overruling a demurrer to the indictment. County attorneys' informations are treated as indictments in such cases. Section 769.12, Code, 1962.

█ Without further discussion, we conclude certiorari was the proper method of review of the municipal court's overruling of plaintiff's demurrer, that its ruling amounted to a final determination of the issue as to jurisdiction and under rule 306 and the inherent power of this court was properly brought

before the supreme court for determination of this vital question in the prosecution.

II. Plaintiff argues in three propositions that the provisions of Code sections 477.51 and 477.52 insofar as they undertake to create a criminal offense are void. We find it necessary to consider only its first proposition.

Plaintiff contends that insofar as sections 477.51 and 477.52 undertake to create a criminal offense, they are void, as being in violation of section 6 of Article I of the Constitution of the State of Iowa and also Amendment 14 to the Constitution of the United States, in that they deny plaintiff *the equal protection of laws and are not laws of a general nature having a uniform operation.*

Section 6, Article I, of the Constitution of Iowa, provides: "All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens."

Amendment 14, section 1, of the United States Constitution, provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

██ Without attempting to confine our consideration to one or the other of these constitutional restrictions, our problem is whether these statutes deny the railroad company equal protection of the laws, and whether they are laws of a general nature having a uniform operation. Pierce v. Chicago & N.W. Ry. Co., 180 Iowa 1385, 164 N.W. 182; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 108 N.W. 902, 33 L. R. A., N. S., 706; State v. Garbroski, 111 Iowa 496, 82 N.W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524. First, some general observations may be in order. The statutes enacted by the Thirty-sixth General Assembly as chapter 105, sections 1 and 2, are in their nature

prohibitory with a criminal penalty for a violation. It is presumed statutes are constitutional, and the one asserting they are not has the burden to establish that allegation. Sperry & Hutchinson Co. v. Hoegh, 246 Iowa 9, 15, 65 N.W.2d 410. Any law of a general nature, unless it has uniform operation, violates the fundamental law. Pierce v. Chicago & N.W. Ry. Co. and McGuire v. Chicago, B. & Q. R. Co., both supra; Anderson v. Uncle Sam Oil Co., 106 Kan. 483, 186 P. 198; Sorenson v. Webb, 111 Miss. 87, 71 So. 273. While the general rules applicable in such cases seem pretty well settled, as is so often the case, the difficulty arises in their application. So here, unless there are cogent reasons, one rule of liability cannot be established for railroad corporations merely as such, and another for other corporations operating under like circumstances and conditions. State v. J. B. & R. E. Walker, Inc., 100 Utah 523, 116 P.2d 766.

We have said that the provision of section 6, Article I, of the State Constitution is the "equality" provision, and that under our system of free constitutional government the courts have a high duty to see to it that legislation does not violate the equality of rights guaranteed by the Constitution. Sperry & Hutchinson Co. v. Hoegh, supra, 246 Iowa 9, 19, 65 N.W.2d 410, and citations.

III. It will be observed from an analysis of sections 477.51 and 477.52 that "Every railway corporation operating or doing business in the state shall * * * pay to every employee engaged in its business all wages or salaries earned by such employee to a day not more than eighteen days prior to the date of such payment", and they provide that any corporation violating that provision "shall be deemed guilty of a misdemeanor and fined in a sum not less than twenty-five dollars * * * for each separate offense * * *." Plaintiff points out that while these provisions are made applicable to railway corporations, they do not apply to corporations engaged in the same transportation business using motor trucks. Is there a good and valid reason for such discrimination? We think not. In regard to the subject matter of the original Act, there is no reasonable justification or necessity for the classification.

We recognize that it is often necessary, in accomplishing

efficient and beneficial legislation, to divide the subjects upon which it operates into classes, and this the legislature can do, but the authorities all agree that the distinction in dividing must not be arbitrary or unreasonable. It must be based upon differences which are apparent and reasonable. As we pointed out in Dunahoo v. Huber, 185 Iowa 753, 756, 171 N.W. 123, 124, "The classification should be based upon some apparent natural reason—some reason suggested by necessity—such a difference in situation and circumstances of the subjects placed in the one class or the other as to suggest the necessity or propriety of discrimination with respect to them."

An interesting article dealing with this question is found in the September 1949 issue of the California Law Review, Volume 37, No. 3, entitled "The Equal Protection of the Laws." It is pointed out therein that "classify", so used, means to define a class, and does not refer to the act of determining whether a person is a member of a particular class. It is the defining of the class to which the law applies which constitutes the distinctly legislative classificatory activity to which the court refers in conceding that the power to classify belongs to the legislature.

It is also elementary that membership in a class is determined by the possession of the traits which define that class. Thus, a corporation is a member of a class if and only if it possesses the traits which define a class. Whatever the defining characteristics of a class may be, every member of that class will possess those characteristics. It is often said a reasonable classification is one which includes all who are similarly situated, and none who is not.

However, as pointed out in the California Law Review article, supra, we must also look beyond the classification to the purpose of the law. Therefore, a reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the law, which may be either the elimination of a public "mischief" or the achievement of some positive public good. Failure to pay wages or salaries by a certain date may be an evil, but this does not justify discrimination between classes in order to put it down. Insofar as the public is concerned, the evil of failure to pay wages or salaries

to employees by a certain date by any corporation engaged in the transportation business is quite as obnoxious to the community as though it were done by a railroad corporation. Surely there is no reasonable ground for such discrimination, especially as to the criminal provisions provided therein. It may even be that small truck or bus corporations are less responsible financially than a railroad corporation as we know them today. No other purpose is suggested or occurs to us as a basis for the statutes here involved.

While there may be some basis, as suggested by the state, for the difference in the classification of corporations and individuals, when examined in relation to the subject matter of the legislation, the classification is in doubt: The subject matter here is the debt owed the employee by the employer, and it is true the limited liability of a corporation may furnish a thin but rational distinction between it and an individual justifying a different treatment of these employees. But this would not apply when one corporation is a railroad corporation and another is a bus or truck corporation engaged in the same business.

Where the evil to be remedied, or the economic benefits to be realized, relates to members of one class quite as well as to another, such a classification would be unwarranted. As pointed out in the Dunahoo v. Huber case, supra, section 6, Article I, of our Constitution, exacts that the general assembly shall not grant to any class of citizens, privileges and immunities which upon the same terms shall not equally belong to all citizens, and this necessarily includes any class into which the citizens or persons may be divided. We are unable to discover any reasonable ground for saying that railroad corporations engaged in the transportation of goods and persons should be charged with a crime for not paying its employees wages by a certain date, and truck and bus corporations engaged in the same business should not be so charged.

While it may be said that "the equal protection of the laws is a pledge of the equal protection of equal laws" (Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 S. Ct. 1064, 1070, 30 L. Ed. 220), changing conditions and circumstances may make a statute which was constitutional when enacted unconstitutional

in the sense that it could not be enacted today. Chastleton Corp. v. Sinclair, 264 U. S. 543, 44 S. Ct. 405, 68 L. Ed. 841; Vigeant v. Postal Telegraph Cable Co., 260 Mass. 335, 157 N.E. 651, 53 A. L. R. 867. In other words, the establishment and growth of other corporations engaged in the same business may create a class of employers identical with those of selected corporations insofar as the evil intended to be corrected by the involved statutes is concerned. Most such employees need regular pay periods, and the economic welfare of their communities depends upon them.

IV. In finding that a classification attempted in a statute involving an occupational tax on peddlers was invalid in State v. Garbroski, supra, 111 Iowa 496, 498, 82 N.W. 959, 56 L. R. A. 570, 82 Am. St. Rep. 524, we discussed this problem and approved a statement in Johnson v. Saint Paul & Duluth R. Co., 43 Minn. 222, 223, 224, 45 N.W. 156, 157, 8 L. R. A. 419, that " 'It has sometimes been loosely stated that special legislation is not class, if all persons brought under its influence are treated alike under the same conditions. But this is only half the truth. Not only must it treat alike, under the same conditions, all who are brought within its influence, but in its classification it must bring within its influence all who are under the same conditions.' "

Further, it was said in the Johnson opinion: "If a distinction is to be made as to the liability of employers to their employees, it must be based upon a difference in the nature of the employment, and not of the employers. One rule of liability cannot be established for railway companies, merely as such, and another rule for other employers, under like circumstances and conditions, * * *. Neither would it relieve the act from the imputation of class legislation that it applies alike to all railroads." See Chicago, Kansas and Western R. Co. v. Pontius, 157 U. S. 209, 15 S. Ct. 585, 39 L. Ed. 675.

We think something more tangible than a mere name, business or purpose of a corporation is exacted by the courts as a basis of classification. There must be some connection between the legislation and the subjects upon which it operates, and

within the latter must be included all subjects in like situation and circumstances.

Gulf, Colorado and Santa Fe Ry. Co. v. Ellis, 165 U. S. 150, 152, 153, 157, 17 S. Ct. 255, 256, 257, 41 L. Ed. 666, 667, 669, considers a Texas statute providing that where a claim in certain instances against a railroad company, not exceeding in amount $50, shall be presented to the company, supported by an affidavit, if the company fails to pay the same within thirty days, a recovery may be had, and an attorney fee of $10 shall be " 'assessed and awarded by the court or jury trying the issue.' " It was denounced as class legislation in these words: "No individuals are thus punished, and no other corporations. The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. * * * It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. * * * Before a distinction can be made between debtors, and one be punished for a failure to pay his debts, while another is permitted to become in like manner delinquent without any punishment, there must be some difference in the obligation to pay, some reason why the duty of payment is more imperative in the one instance than in the other. If it be said that this penalty is cast only upon corporations, that to them special privileges are granted, and therefore upon them special burdens may be imposed, *it is a sufficient answer to say that the penalty is not imposed upon all corporations.* The burden does not go with the privilege. Only railroads of all corporations are selected to bear this penalty. The rule of equality is ignored. * * * Further, the penalty is imposed not upon all corporations charged with the quasi public duty of transportation, but only upon those charged with a particular form of that duty. So *the classification is not based on any idea of special privileges by way of incorporation,* nor of special privileges given thereby for purposes of private gain, nor even of such privileges granted for the discharge of one general class of public duties. * * * But, if the classification is not based upon the idea of special privileges, can it be sus-

tained upon the basis of the business in which the corporations to be punished are engaged? That such corporations may be classified for some purposes is unquestioned. The business in which they are engaged is of a peculiarly dangerous nature, and the Legislature, in the exercise of its police powers, may justly require many things to be done by them in order to secure life and property. Fencing of railroad tracks, use of safety couplers, and a multitude of other things easily suggest themselves. And any classification for the imposition of such special duties—duties arising out of the peculiar business in which they are engaged—is a just classification, and not one within the prohibition of the Fourteenth Amendment. Thus it is frequently required that they fence their tracks, and as a penalty for a failure to fence double damages in case of loss are inflicted. Missouri Pacific Railway Co. v. Humes, 115 U. S. 512 [6 S. Ct. 110, 29 L. Ed. 463]. But this and all kindred cases proceed upon the theory of a *special duty* resting upon railroad corporations by reason of the business in which they are engaged—a duty not resting upon others; a duty which can be enforced by the Legislature in any proper manner; and whether it enforces it by penalties in the way of fines coming to the State, or by double damages to a party injured, is immaterial. It is all done in the exercise of the police power of the State and with a view to enforce just and reasonable police regulations." (Emphasis supplied.)

Obviously, the duty imposed by the sections of the Code here are not related to special hazards, special privileges or peculiarities of the industry. It relates only to a common obligation of all employers, i.e., to pay the wages due its employees within a reasonable time after the services were rendered.

Notice is taken that the case of St. Louis, Iron Mountain and St. Paul Ry. Co. v. Paul, 173 U. S. 404, 19 S. Ct. 419, 43 L. Ed. 746, cited by respondent, where an Act of the General Assembly of Arkansas required railroad companies, upon the discharge of employees, to pay the wages due on the day of such discharge, and provided a penalty for nonpayment, was upheld as a justified amendment of the railroad charter. Nevertheless, we find the former decision in the Ellis case was

not impinged by statements therein, for the pronouncements made in the Ellis case were again adhered to in Atchison, Topeka and Santa Fe R. Co. v. Matthews, 174 U. S. 96, 19 S. Ct. 609, 43 L. Ed. 909, which construed a Kansas statute, and in the case of Fidelity Mutual Life Assn. v. Mettler, 185 U. S. 308, 22 S. Ct. 662, 46 L. Ed. 922, a Texas case.

 We are content to follow the Ellis case in this jurisdiction requiring a material difference or evident cause for a distinction between classes of individuals or corporations to justify the application of different laws thereto. Attention to the question involved in the concrete, rather than the abstract, can lead to no other result. All persons in like situations should stand equal before the law. No favoritism should be tolerated. If it is a good law for a driver of a Diesel locomotive, why isn't it equally good for a driver of a Diesel truck? There is no greater need for prompt pay of one employee than the other. Nothing is involved herein except the time and manner of payment of wages or salaries, and there is no apparent or revealed reason why one must be paid in one manner and the other differently. There is nothing in the situation of the one which will justify extending the protection of a statute like that under consideration for his benefit and denying such benefit to the other. No reason appears why the railroad corporations should be penalized for late payments and the truck or bus corporations, also engaged in the business of transporting persons and goods, be relieved of that penalty. As stated in State ex rel. Richards v. Hammer, 42 N. J. L. 435, 440, "The true principle requires something more than mere designation by which such characteristics as will serve to classify, for the characteristics which thus serve as the basis of classification must be of such a nature as mark the objects so designated as peculiarly requiring exclusive legislation. There must be substantial distinction, having a reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects or places excluded." For further discussion of the applicable rule and authorities therefor, see State v. J. B. & R. E. Walker, Inc., supra; State v. Martin, 193 Ind. 120, 139 N.E. 282, 26 A. L. R. 1386; Vardaman v. McBee, 198 Miss. 251,

21 So.2d 661; State ex rel. Knox v. Speakes, 144 Miss. 125, 109 So. 129; Annotations in 15 L. R. A., N. S., 350; 27 L. R. A., N. S., 255; 35 L. R. A., N. S., 549; 12 A. L. R. 612, 614; 26 A. L. R. 1396; 12 Am. Jur., section 521, page 217; 16A C. J. S., Constitutional Law, section 489.

V. The provisions of the Fourteenth Amendment to the Constitution of the United States requiring equal protection of the laws, and the sixth section of Article I of the State Constitution requiring that all laws shall have a uniform operation should not be frittered away. We have said their importance in guarding against the segregation of society into classes, and in assuring to all citizens that equality before the law, which is essential to free government, cannot be overestimated. They have been receiving special attention by the courts recently. If the constitutionality of these statutes cannot be sustained save by resort to refinements in distinction and sophistry in reasoning, in which no court should indulge, and which would be destructive of the limitations above referred to on legislative power, they should fall. Vardaman v. McBee, supra, 198 Miss. 251, 21 So.2d 661; 16A C. J. S., Constitutional Law, section 489.

VI. Respondent's contention that the provisions of sections 477.51 and 477.52 constitute an amendment to plaintiff's Articles of Incorporation within the purview of the Iowa Constitution, Article VIII, section 12, is in the category mentioned above.

Article VIII, section 12, provides: "Subject to the provisions of this article, the General Assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two thirds of each branch of the General Assembly; and no exclusive privileges, except as in this article provided, shall ever be granted." No exceptions appear therein.

While corporations are creatures of the state, subject to control by the state, that control is not absolute and is subject to limitations found elsewhere in both the Federal and State Constitutions. These include the provisions relating to equal protection, due process, and uniform operation of laws. In fact,

this Article specifically provides "no exclusive privileges * * * shall ever be granted."

Respondent places heavy reliance on the cases of St. Louis, Iron Mountain and St. Paul Ry. Co. v. Paul, supra, and Erie R. Co. v. Williams, 233 U. S. 685, 34 S. Ct. 761, 58 L. Ed. 1155, 51 L. R. A., N. S., 1097. They are clearly distinguishable, for they are based on dissimilar constitutional and statutory provisions. In the Paul case the Arkansas Constitution, Article XII, section 6, provided: "* * * The general assembly shall have the power to alter * * * any charter of incorporation * * * whenever, in their opinion, it may be injurious to the citizens of this State * * *." The statute involved carried the title, "AN ACT to provide for the protection of servants and employees of railroads." No such provision appears in the Iowa Constitution, and the title to the Act, now sections 477.51 and 477.52, did not pretend to furnish needed special *protection* for employees of railroads. The title simply stated: "AN ACT in relation to semi-monthly payment of wages and salaries by railway corporations and providing a penalty for violation thereof." No cause why special penalties or privileges were required in this industry is apparent, and we conceive of none. Furthermore, there was little or no discussion of class legislation or equal protection in the Paul opinion, but the discussion was confined to the authority to deal with a peculiar circumstance then existing in Arkansas.

We find no consideration given class legislation or equal protection requirements in the early Williams case, and agree with plaintiff that it indicates the power to amend corporate charters is and should be limited by the appropriate provisions of the State and Federal Constitutions.

VII. Sections 477.51 and 477.52 are criminal statutes and apply only to railway corporations. They do not apply to other common carriers, other corporations similarly engaged, or other businesses of a like nature not operating under a corporate charter. Their provisions do not relate to duties peculiar to a common carrier alone. To create such a duty and impose such a penalty only on railroad corporations for failure to meet wage and salary payments within a certain time, and not include other persons or corporations similarly operating, violates both

the equal protection and the uniformity requirements of the State and Federal Constitutions, and proceedings thereunder must be declared null and void. We are satisfied the classification attempted in sections 477.51 and 477.52 was unreasonable and arbitrary, that they indicate no distinction which bears a just and proper relation to the attempted classification, and that the criminal provisions therein must fall.

So believing, we find it unnecessary to consider or discuss whether these sections also are violative of the constitutional guaranty of freedom to contract, are a valid exercise of police power, or deprive plaintiff of liberty and property without due process of law.

We conclude that the state legislature was without power to impose penalties in the Act here in question, and that the criminal action commenced against plaintiff thereunder must be dismissed.—Writ sustained and criminal charge against plaintiff dismissed.

All JUSTICES concur.