In the Matter of the GUARDIANSHIP OF Helen MATEJSKI.

Jan Matejski and Tekla Matejski, Appellants.

No. 86–1608.

Supreme Court of Iowa.

Feb. 17, 1988.

Robert C. Oberbillig, Des Moines, for appellants.

Dennis Groenenboom, Des Moines, and Kelly A. Rice, Sioux City, for appellee.

SNELL, Justice.

Jan and Tekla Matejski are the legal guardians of their thirty-three-year-old mentally retarded daughter, Helen. On May 28, 1986, Jan and Tekla filed an application seeking a court order which would permit them to have Helen sterilized. Helen's court-appointed counsel followed with a motion to dismiss, challenging the district court's subject matter jurisdiction. The district court agreed with this challenge and dismissed the application. This appeal followed.

We are required as an initial matter to determine whether our district courts have subject matter jurisdiction enabling them to act upon a legal guardian's application for authority to sterilize a mentally retarded ward. The parties agree that no Iowa statute specifically and expressly addresses such jurisdiction. We note that although the term "jurisdiction" is broad and includes both subject matter and in personam elements, *Chicago & N.W. Ry. Co. v. Fachman*, 255 Iowa 989, 994, 125 N.W.2d 210, 213 (1963), we are here concerned with a challenge to only the district court's subject matter jurisdiction. This jurisdiction is the court's power to hear and determine cases of the general class to which the particular proceedings belong. *E.g., State v. Ryan*, 351 N.W.2d 186, 187 (Iowa 1984). If found to exist, this power includes the authority to carry a judgment and decree into execution. *Western Grocer Co. v. Glenn*, 226 Iowa 1374, 1376, 286 N.W. 441, 442 (1939).

Courts constitute the agency by which judicial authority is made operative. The element of sovereignty known as judicial is vested, under our system of government, in an independent department, and the power of a court and the various

subjects over which each court shall have jurisdiction are prescribed by law. We are dealing here with a question of jurisdiction, which may be defined as the power conferred upon a court to take cognizance of and to decide cases in law, equity, or special proceedings, and to carry its judgments and decrees into execution.

*Franklin v. Bonner*, 201 Iowa 516, 518, 207 N.W. 778, 779 (1926).

Our district courts are courts of general jurisdiction. *E.g., Walles v. International Bhd. of Elec. Workers*, 252 N.W.2d 701, 706 (Iowa), *cert. denied*, 434 U.S. 856, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). As such, they administer all Iowa law. *Charles v. Epperson & Co.*, 258 Iowa 409, 431, 137 N.W.2d 605, 618 (1965). Subject matter jurisdiction is conferred upon our district courts by our constitution. Article V, section 6 provides that "[t]he district court shall be a court of law and equity, which shall be distinct and separate jurisdictions, and have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."

The interrelation between the constitutional grant of authority to the courts and the legislature's right to prescribe procedures is delineated in *Laird Bros. v. Dickerson*, 40 Iowa 665, 670 (1875):

From these constitutional and legislative provisions it is plain to be seen that the District Courts are courts of general jurisdiction, and, except so far as the manner of its exercise is prescribed by the statute, it has jurisdiction over every cause brought within its district. This idea of the general and unlimited jurisdiction of the District Court is further illustrated by the fact that they are styled the District Court for the State, held in and for a particular county, and the judges of the District Courts are judges for the state, with authority to grant writs running into any part of the state and to hold District Courts in districts other than those in which they were elected. It is therefore clear, beyond question, that the District Courts have general jurisdiction of all matters brought before them. But the manner of the exercise of this general and inherent jurisdiction is prescribed by law. The legislature may not deprive the District Court of its jurisdiction, nor, in the least, limit it; all that it is authorized to do is to prescribe the manner of its exercise. This the legislature has done by the enactments above quoted, whereby it is provided that in cases of attachment of property when the defendant is not served (and this was the case in *Courtney v. Carr* [6 Iowa 238 (1858)], above stated), the action should be brought in the county where the property attached, or some portion of it, was situated. This, without more, would not deprive the District Court of its general jurisdiction over the subject matter, which the constitution has conferred, so as to render its proceedings or judgment void, that is a nullity; although it might very clearly give the right to the defendant to appear and have the action dismissed, because it was not brought in the manner provided by statute.

Similarly, in *Hutton v. Drebilbis*, 2 Greene 593, 594–95 (Iowa 1850), this court said:

We do not understand by this article that the legislature have the right to limit or restrict the jurisdiction thus conferred upon the district courts by the constitution, but merely to define and regulate the manner in which that jurisdiction shall be employed. . . .

. . . .

The fundamental law of the state has fixed the jurisdiction of the district courts, and it is not within the power of the legislature to change or modify it.

Iowa Code section 602.6101 (1985) contains the legislative directive regarding jurisdiction which provides the focus of the present appeal. That statute provides as follows:

A unified trial court is established. This court is the "Iowa District Court." The district court has exclusive, general, and original jurisdiction of all actions, proceedings, and remedies, civil, criminal, probate and juvenile, except in cases

where exclusive or concurrent jurisdiction is conferred upon some other court, tribunal, or administrative body. The district court has all the power usually possessed and exercised by trial courts of general jurisdiction, and is a court of record.

In the present proceedings the district court sat in its probate capacity. Iowa Code section 633.10 (1985) provides, in pertinent part, that "[t]he district court sitting in probate shall have jurisdiction of ... the administration ... of guardianships." The comment to this section states that

[t]he probate court is simply a division of the district court, and this section is designed to clarify the jurisdiction of the district court sitting in probate and to provide without any question that the district court sitting in probate shall have full jurisdiction of all matters pertaining to ... guardianships....

Iowa Code Ann. § 633.10 (West 1964) Bar Committee Comment. Section 633.635 of the Probate Code specifies which powers and duties of a guardian may be exercised without prior court approval and which may not. Appellants applied for court approval under section 633.635(2)(b) to arrange for "major elective surgery or any other nonemergency major medical procedure."

■ It is accordingly apparent that Iowa follows the rule that probate jurisdiction, though a special jurisdiction, is not exercised by separate courts, but by a separate division of a court of general jurisdiction. See 20 Am.Jur.2d Courts § 32, at 411–12 (1965). Such is evinced by the case law under section 633.10 which states that when sitting in probate the district court is a court of general jurisdiction. E.g., Stake v. Cole, 257 Iowa 594, 602, 133 N.W.2d 714, 718 (1965). Consequently, although the probate court is not open to ordinary actions at law or suits in equity, it has plenary jurisdiction to determine matters essential to probate business before it. In re Ferris' Estate, 234 Iowa 960, 973, 14 N.W.2d 889, 897 (1944). We think this finding of plenary jurisdiction also follows from the statutory consolidation of jurisdiction

over all probate actions, Iowa Code 602.-6101 (1985), and our canon of construction which gives statutory language its ordinary meaning unless a contrary meaning is suggested by the legislature, e.g., Good v. Iowa Civil Rights Comm'n, 368 N.W.2d 151, 155 (Iowa 1985).

In this vein, we cite with approval the following excerpt from 27 Am.Jur.2d Equity § 69, at 592 (1969):

It is the universal rule of equity that where a person is not equal to protecting himself in a particular case, the court will protect him. As part of the inherent power of equity, a court of equity has full and complete jurisdiction over the persons of those who labor under any legal disability.... Where legal disability of the individual is shown, the jurisdiction of the court is plenary and potent to afford whatever relief may be necessary to protect his interests and preserve his estates. The court's action in such a case is not limited by any narrow bounds, but it is empowered to stretch forth its arm in whatever direction its aid and protection may be needed. While this is indeed a special exercise of equity jurisdiction, it is beyond question that by virtue thereof the court may pass upon purely personal rights.

See In re C.D.M., 627 P.2d 607, 610–11 (Alaska 1981); In re A.W., 637 P.2d 366, 374 (Colo.1981); In re Moe, 385 Mass. 555, 563, 432 N.E.2d 712, 719 (1982); In re Terwilliger, 304 Pa.Super. 553, 561, 450 A.2d 1376, 1381 (1982). The present matter was heard in equity. See Iowa Code § 633.33 (1985).

This court has yet to address the specific issue which this case presents us. Those jurisdictions that have resolved the issue have done so without unanimity. Compare In re C.D.M., 627 P.2d 607 (Alaska 1981) (jurisdiction found); In re A.W., 637 P.2d 366 (Colo.1981) (jurisdiction found); In re P.S., 452 N.E.2d 969 (Ind.1983) (jurisdiction found); In re Moe, 385 Mass. 555, 432 N.E.2d 712 (1982) (jurisdiction found); In re Penny N., 120 N.H. 269, 414 A.2d 541 (1980) (jurisdiction found); In re Grady, 85 N.J. 235, 426 A.2d 467 (1981) (jurisdiction

found); *In re Terwilliger,* 304 Pa.Super. 553, 450 A.2d 1376 (1982) (jurisdiction found); *In re Guardianship of Hayes,* 93 Wash.2d 228, 608 P.2d 635 (1980) (jurisdiction found); *In re Guardianship of Eberhardy,* 102 Wis.2d 539, 307 N.W.2d 881 (1981) (jurisdiction found); *with Hudson v. Hudson,* 373 So.2d 310 (Ala.1979) (no jurisdiction); *Guardianship of Tulley,* 83 Cal. App.3d 698, 146 Cal.Rptr. 266 (1978) (no jurisdiction), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); *Guardianship of Kemp,* 43 Cal.App.3d 758, 118 Cal.Rptr. 64 (1974) (no jurisdiction); *In re S.C.E.,* 378 A.2d 144 (Del.Ch.1977) (no jurisdiction); *In re M.K.R.,* 515 S.W.2d 467 (Mo. 1974) (no jurisdiction); *In re D.D.,* 64 A.D. 2d 898, 408 N.Y.S.2d 104 (1978) (no jurisdiction), *appeal dismissed,* 49 N.Y.2d 879, 405 N.E.2d 233, 427 N.Y.S.2d 990 (1980); *Frazier v. Levi,* 440 S.W.2d 393 (Tex.Civ.App. 1969) (no jurisdiction); *see also Smith v. Superior Court,* 151 Ariz. 67, 725 P.2d 1101 (1986) (absent statute, trial court has no jurisdiction to require that criminal defendants be sterilized as condition of reduced sentence); *Holmes v. Powers,* 439 S.W.2d 579 (Ky.1968) (sterilization disallowed because no existing procedure for obtaining mentally retarded person's actual or substituted consent).

Many of these cases split company over the relevance of the sterilization decision's importance. Some courts find the decision's magnitude an argument against jurisdiction. *See Hudson,* 373 So.2d at 311–12; *Guardianship of Tulley,* 83 Cal.App. 3d at 701–702, 146 Cal.Rptr. at 268; *In re S.C.E.,* 378 A.2d at 145; *In re M.K.R.,* 515 S.W.2d at 470–71; *see also In re Guardianship of Eberhardy,* 102 Wis.2d at 567–79, 307 N.W.2d at 892–99 (jurisdiction not exercised in light of fundamental constitutional rights involved). Others consider its importance an indisputable argument in favor of jurisdiction. *See In re A.W.,* 637 P.2d at 369; *In re Moe,* 385 Mass. at 564–65, 432 N.E.2d at 718–20; *In re Grady,* 85 N.J. at 244–52, 426 A.2d at 473–76; *In re Terwilliger,* 304 Pa.Super. at 562–63, 450 A.2d at 1381 n. 1. One of these latter courts has gone so far as to label the contrary result "an abdication of the judi-

cial function." *In re Guardianship of Hayes,* 93 Wash.2d at 231, 608 P.2d at 637.

■ We find neither of these rationales pertinent to the jurisdictional issue. Our law is clear that the issue of subject matter jurisdiction is an abstract inquiry unrelated and precedent to the rights of the parties to a particular case. *State ex rel. Iowa State Highway Comm'n v. Read,* 228 N.W. 2d 199, 202 (Iowa 1975); *Groves v. Donohue,* 254 Iowa 412, 417–18, 118 N.W.2d 65, 68 (1962) (quoting 14 Am.Jur. *Courts* § 160, at 364–65 (1938)).

> "Jurisdiction of the subject matter does not mean simply jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class to which that particular case belongs, of the nature of the cause of action, and of the relief sought."

*Groves,* 254 Iowa at 417, 118 N.W.2d at 68 (quoting 14 Am.Jur. *Courts* § 160, at 364 (1938)).

As the supreme court of Alaska stated in summarizing its disagreement with the courts which have denied jurisdiction:

> We believe these decisions confuse the question of a court's authority to hear and decide such matters with the question of whether, in exercising that authority, the court can order a particular individual sterilized without violating his or her constitutional rights. As a result, these courts have held that they lacked *jurisdiction* when their concerns should have been whether or not an order sanctioning the sterilization of a particular incompetent would have been *constitutional.*

*In re C.D.M.,* 627 P.2d at 610.

Stated another way, we do not believe our courts lack jurisdiction over a case merely because the case is important or unavoidably includes a constitutional dimension. Appellee, in effect, would have us remove the present issue from the decisional process provided by our law and judicial system. We know of no area of law where this has been done. As always, we must remain "mindful that a court 'cannot escape the demands of judging or of

making ... difficult appraisals.'" *In re Guardianship of Hayes*, 93 Wash.2d at 231, 608 P.2d at 637 (quoting *Haynes v. Washington*, 373 U.S. 503, 515, 83 S.Ct. 1336, 1344, 10 L.Ed.2d 513, 521 (1963)).

We also disagree with appellee's contention that the 1977 legislative repeal of the theretofore-existing mandatory sterilization law, *see* Iowa Code ch. 145 (1977), coupled with the legislature's failure to enact new provisions concerning the topic, manifest a legislative intent that the district court not be vested with the power to authorize sterilizations. That earlier law provided for the mandatory sterilization of persons "who are mentally ill or retarded, syphilitic, habitual criminals, moral degenerates, or sexual perverts and who are a menace to society," Iowa Code § 145.2 (1977),

> if in the judgment of a majority of [the state board of eugenics] procreation by such persons would produce a child or children having an inherited tendency to mental retardedness, syphilis, mental illness, epilepsy, criminality, or degeneracy, or would probably become a social menace or ward of the state, and there is no probability that the condition of such person so investigated and examined will improve to such an extent as to avoid such consequences....

Iowa Code § 145.9 (1977). The legislature in repealing Iowa Code chapter 145 cryptically enacted "an act to abolish the state board of eugenics." 1977 Iowa Acts ch. 77.

We agree with the supreme court of Wisconsin which stated, in dealing with an argument identical to that presented here, that "[t]he repeal of the mandatory eugenic sterilization law is irrelevant to ... the [district] court's jurisdiction in respect to nonmandatory therapeutic or contraceptive sterilization procedures of uninstitutionalized incompetent persons." *In re Guardianship of Eberhardy*, 102 Wis.2d at 560, 307 N.W.2d at 890. This conclusion was grounded in the Wisconsin Supreme Court's determination that all that could be concluded from the repeal was that the legislature either became disenchanted with the efficacy of eugenic sterilization or became concerned with the constitutionali-

ty of such a mandatory procedure. *Id.* at 559, 307 N.W.2d at 890. We conclude that our district courts possess subject matter jurisdiction over, and accordingly may hear and determine, applications seeking authorization for sterilization of a mentally incapacitated ward, such as that involved here.

Having found jurisdiction in the district court over the application, we are presented with a request by both parties that we outline a series of procedural protections and substantive criteria to guide the lower courts in adjudicating these applications.

We are not persuaded that such action is appropriate given the posture of the present case. The sole question before us today is that of the district court's subject matter jurisdiction. The excursion suggested by the parties would be in the nature of an advisory opinion. In this state, we view such opinions as "interdicted." *Farmers Butter & Dairy Coop. v. Farm Bureau Ins. Co.*, 196 N.W.2d 533, 539 (Iowa 1972).

We reverse and remand this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who dissents and LAVORATO, J., who takes no part.

HARRIS, Justice (dissenting).

I respectfully dissent. However it is worded the pending application comes down to a matter of forced termination of reproductive rights. If a more inappropriate instance for judicial innovation exists I cannot imagine it.

The majority obviously possesses the power to claim jurisdiction over this application. It can do so, if it chooses, by asserting some fundamental or inherent power. It could, if it chooses, search out some real or imaginative statutory justification. *See* Iowa Code § 633.635(2)(b) (1987). But it is inappropriate and unwise to do so. There is a difference between jurisdiction and authority. *See City of Des Moines v. Des Moines Police Bargaining Unit Ass'n*, 360 N.W.2d 729, 730 (Iowa

1985). We should not claim authority in an area which should be and has long been within the exclusive province of the legislature.

I. Reproductive rights for retarded persons make up a subject which is, to put it mildly, shot through with searching social and ethical questions which are as controversial as they are complex. In taking this first wide leap the majority commits itself to the eventual resolution of a twisted conglomeration of attendant social and ethical issues. Future litigants, faced with unanswered questions of great social and ethical dimensions, or with missing ingredients of a vague application process, will continue to press us for determinations which we are singularly unfit to reach.

At what level of mental retardation can sterilization be compelled? Will other mental abnormalities subject a person to sterilization? Will any other afflictions? Will a decision to compel sterilization be a matter of the probate court's discretion? What board or body, if any, will suggest statewide standards? Can any branch of district court, other than probate, entertain applications? If so, does that change our scope of review on appeal? Will an attorney be required to represent the person to be sterilized? Who will pay attorney fees and by what authority? Who will pay other court costs? To whom will the sterilization order be directed? What voice does the person being sterilized have in selection of a physician? How will the court order be structured as to the manner of the sterilization, time, and place? If there is resistance how will the order be enforced?

The good news is that the majority, in obvious and wise recognition of its inability to do so, chooses not to address these questions. The bad news is that the majority consigns them to Iowa's individual trial judges for ad hoc determinations. Iowa's

trial courts must now face these and, undoubtedly, a host of other public policy decisions under the majority holding.

II. The legislature has not answered these complex social questions because it has withdrawn the state from participation in involuntary sterilizations. *See* Annotation, *Jurisdiction of Court to Permit Sterilization of Mentally Defective Person in Absence of Specific Statutory Authority,* 74 A.L.R.3d 1210, 1214 (1976) ("[F]act that previously enacted sterilization statute was repealed ... may be construed ... as evidence that the legislature did not intend to invest the judiciary with the jurisdiction to permit sterilization."). Iowa's first sterilization law was enacted in 1911, 1911 Iowa Acts ch. 129. It has been repealed and superseded a number of times. *See The New Iowa Statute on Sterilization of Defectives,* 15 Iowa L.Rev. 238 (1930). Our most recent act, many times amended, appeared as Iowa Code chapter 145 (1977). It set up the state board of eugenics and provided a careful process to screen and consider applications for involuntary sterilization. After many years the plan was repealed. 1977 Iowa Acts ch. 77. In repealing it, a clear legislative choice was made. This time the repealed process was not supplanted by another one.

The majority cites *In re Eberhardy,*[1] 102 Wis.2d 539, 307 N.W.2d 881 (1981), as precedent for jurisdiction over this application. *Eberhardy* is, however, precedent for declining to interfere in what should be a legislative process. The *Eberhardy* majority quoted Justice Frankfurter:

Courts are not equipped to pursue the paths for discovering wise policy. A court is confined within the bounds of a particular record, and it cannot even shape the record. Only fragments of a social problem are seen through the nar-

---

1. The guardians also cite and quote from Justice Holmes in *Buck v. Bell,* 274 U.S. 200, 207, 47 S.Ct. 584, 585, 71 L.Ed. 1000, 1002 (1927) (upholding mandatory sterilization law and noting that "[i]t would be strange indeed if [the public] could not call upon those who ... sap the strength of the state for these lesser sacrifices ... in order to prevent our being swamped with incompetence.... Three generations of imbe-

ciles are enough."). *Buck v. Bell,* which is often cited by those favoring involuntary sterilization, involved the constitutionality of a Virginia statute and not a claim of inherent common law court jurisdiction. Even so, the opinion is facing continued and increasing criticism. *See* Dudziak, *Oliver Wendell Holmes as Eugenic Reformer: Rhetoric in the Writing of Constitutional Law,* 71 Iowa L.Rev. 833 (1986).

row windows of a litigation. Had we innate or acquired understanding of a social problem in its entirety, we would not have at our disposal adequate means for constructive solution. The answer to so tangled a problem ... is not to be achieved by ... judicial resources....

*Id.* at 571, 307 N.W.2d at 895–96 (quoting *Sherrer v. Sherrer,* 334 U.S. 343, 365–66, 68 S.Ct. 1087, 1102, 92 L.Ed. 1429, 1444 (1948) (Frankfurter, J., dissenting)). The *Eberhardy* concurring opinion pointed out that the involuntary sterilization question, at best,

is a most difficult one and should never be made by courts alone as it involves a value judgment central to the constituent fabric of our society. We all ought to be involved in making this decision whether we participate as a litigant, judge, attorney, physician or as an American citizen, voting for elective representatives. In an age when the courts are for the first time declaring retarded individuals to be of equal worth with other individuals in our society and under our constitution, mandating equal educational and training opportunities, it seems anomalous that equal justice is being threatened.

*Id.* at 591–92, 307 N.W.2d at 905.

Even without this long history of legislative activity the subject is prototypical of those which cry out for legislative and not for judicial solution. Unlike our own branch of government, the legislative branch is equipped to devise systems on the basis of findings after hearings before a committee. In that way a workable process could be fine-tuned on the basis of carefully worked out and arrived at public policy decisions. Courts are ill-equipped to embark upon such a venture and are ill-advised to do so.

I would affirm.